IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 23-cv-02455-LTB

J.R.G.,

    Plaintiff,

v.

MARTIN O'MALLEY[1], Commissioner of the Social Security Administration,

    Defendant.

_____

ORDER
_____

Plaintiff, J.R.G., appeals from the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act 42 U.S.C. § 401, *et. seq.,* and his application for supplemental security income ("SSI"), filed pursuant to Title XVI of the Social Security Act 42 U.S.C. § 1381, *et. seq.* Jurisdiction is proper under 42 U.S.C. § 405(g) and § 1383(c)(3). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the SSA Commissioner's decision as follows.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying his DIB

---

[1] Effective December 20, 2023, pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

and SSI applications filed on April 1, 2019. [Administrative Record at Doc #9 "AR" 241-51] After Plaintiff's applications were initially denied [AR 64-63], and again denied upon reconsideration [AR 88-105], an Administrative Law Judge ("ALJ") held an evidentiary hearing on October 25, 2022 [AR 32-59], and thereafter issued a written ruling on November 4, 2022. [AR 9-19] The ALJ denied Plaintiff's applications because she determined that Plaintiff could perform work that existed in significant numbers in the national economy and, thus, he was not disabled from his alleged onset date of January 31, 2018, through the date of the ALJ's decision on November 4, 2022. [AR 18-19] This order became the SSA Commissioner's final decision when the Appeals Council denied review. [AR 1-5]

Plaintiff timely filed his complaint with this court seeking judicial review of the Commissioner's final decision. [Doc #1]

## II. ALJ's DECISION

In her decision, the ALJ applied the five-step sequential process outlined in 20 C.F.R. § 404.1520(a) and § 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after his January 31, 2018 onset date. [AR 11] At step two, the ALJ found that Plaintiff had the severe impairments of: degenerative disc disease, as well as migraines and tension headaches. [AR 12] The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment deemed to be so severe as to preclude substantial gainful employment at step three. [AR 14]

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) and §

416.967(b), except he:

> can frequently climb ramps and stairs, but he cannot climb ladders, ropes, or scaffolds. He can frequently stoop, kneel, crouch, and crawl. He must avoid unprotected heights and dangerous moving machinery. He must avoid working in noisy, industrial environments and would work best in a moderate or office noise level setting or less. [AR 14]

At step four, based on this assessed RFC, the ALJ found Plaintiff was unable to perform any of his past relevant work as a bagger and loader, a delivery driver, a household appliance installer, a furniture installer, and an exhaust emissions inspector. [AR 17-18]

The ALJ then found, at step five, that considering Plaintiff's age, education, work experience, and assessed RFC, he could perform representative light, unskilled (SVP 2) occupations such as office helper, mail room clerk, and merchandise marker, and that such jobs existed in significant numbers in the national economy. [AR 18] As a result, the ALJ concluded at step five that Plaintiff was not disabled, as defined by the Social Security Act, from his alleged onset date of January 31, 2018, through November 4, 2022, the date of the ALJ's decision. [AR 19]

### III. STANDARD OF REVIEW

In Social Security appeals, this Court reviews the ALJ's decision to determine whether the factual findings were supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Levan v. Berryhill*, No. 18-CV-02340-NRN, 2019 WL 2336852 (D. Colo. 2019) (unpublished) (citing *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007)); *see also Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Kidd v. Comm'r, SSA*, No. 21-1363, 2022 WL 3041097 (10th Cir. Aug. 2, 2022) (unpublished) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). And "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue, supra*, 489 F.3d at 1084 (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Additionally, "[t]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Kidd v. Comm'r, supra* (quoting *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). Therefore, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

As a result, reviewing courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax v. Astrue, supra,* 489 F.3d at 1084; *see also Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).

## IV. ANALYSIS

On appeal, Plaintiff asserts that the ALJ erred when determining his RFC, in

that she: 1) improperly relied on the expert opinion provided by Samuel Rubinson, M.D.; 2) found Plaintiff's subjective complaints as to his reported disabling limitations "not entirely consistent" with the record; 3) relied upon activities that do not support the assessed RFC as to Plaintiff's exertional limitations; 4) "overlooked" medical evidence provided by Plaintiff's chiropractor; and 5) failed to address several non-exertional requirements rendering the assessed RFC "incomplete."

### A. Opinion Evidence Provided by Dr. Rubinson:

I first address Plaintiff's assertion that the ALJ erred in finding that the opinion provided by Dr. Samual Rubinson, the consultive examiner, was entitled to persuasive weight.

When assessing the medical opinion evidence as to Plaintiff' exertional limitations, the ALJ first rejected the agency medical consultant's opinion that the evidence did not support assessing *any* severe physical impairment. [AR 17] Instead, the ALJ found that:

> More consistent with the record is the opinion of the consultative examiner, Samuel Robinson [sic], M.D., which is generally persuasive. According to Dr. Rubinson, the claimant could lift and carry 20 pounds frequently and 20 pounds occasionally. He further indicated the claimant could stand and walk six hours cumulatively in an eight-hour day. Dr. Rubinson opined that the claimant did not exhibit any postural or manipulative limitations and he had no environmental limitations. In support of this opinion, Dr. Rubinson noted the claimant exhibited normal motor and sensory exams as well as normal range of motion. This opinion is generally consistent with the objective evidence, including observations of normal gait, full strength, normal range of motion, and normal neurological examinations. However, the undersigned finds the claimant has additional postural and environmental limitations due to the combined effects of his impairments. [AR 17]

The SSA regulations for evaluating opinion evidence applicable to this case provide five factors for an ALJ's consideration when evaluating the persuasiveness

of a medical opinion: 1) supportability; 2) consistency; 3) relationship with the claimant (which encompasses the length of treatment relationship, the frequency of examinations; the purpose and extent of the treatment relationship, and the examining relationship); 4) specialization; and 5) other factors. 20 C.F.R. §§ 404.1520c(c), 416.920c. The ALJ is required to discuss only two factors: namely, supportability and consistency. *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *2 (10th Cir. Oct. 28, 2022) (unpublished); *Miles v. Saul*, No. 20-CV-1456-WJM, 2021 WL 3076846, at *2-3 (D. Colo. July 21, 2021) (unpublished). So long as the Court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen v. Comm'r, supra*, 2022 WL 15570650, at *5.

As an initial matter, I note that Plaintiff's argument that Dr. Rubinson's opinion was due less weight as a non-treating source, pursuant to *Carpenter v. Astrue*, 537 F.3d 1264 (10th Cir. 2008), is misplaced as is it based on an inapplicable legal standard. [Doc #15 at 16] The regulations that apply to claims filed on March 27, 2017, or later – such as Plaintiff's – specifically indicate that ALJ's "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c; *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023). The ALJ's order specifically provides that she considered the medical opinion(s) in accordance with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c [AR 14], and that she "cannot defer or give any specific evidentiary weight, including controlling weight,

to any . . . medical opinion(s), including those from medical sources." [AR 16]

Plaintiff also contends that Dr. Rubinson's opinion was "not entitled to any consideration" by the ALJ because he failed to "connect any of his objective findings to his RFC ideas." [Doc #15 at 15] However, Dr. Rubinson reasonably opined that Plaintiff could perform light level work based on his normal examination findings and some degenerative disc disease. [AR 348-50] As the ALJ noted, this was consistent with the other objective medical evidence in the record. [AR 17] In so finding, the ALJ relied on record evidence consisting of examinations and observations of normal gait, full strength, normal range of motion, and normal neurological examination. [AR 347-50, 442, 445, 527, 614]

Plaintiff also makes specific challenges to Dr. Rubinson's opinion that he contends undermined the ALJ's finding that it was persuasive. First, he argues that the opinion was "premature" in that it was dated *before* x-rays were obtained of his spine. The records show that Dr. Rubinson's examination of Plaintiff was on July 3, 2019, at 9:45 AM, and his dictated medical report was also transcribed on July 3, 2019. [AR 348-50] The radiology report indicates that the "exam date and time" of Plaintiff's x-rays was "07/03/2019 12:00 AM" and was signed by the interpreting doctor (Nancy Benedetti, MD) on July 11, 2019. [AR 347] Dr. Rubinson nonetheless determined that Plaintiff "could have some degenerative dis[c] disease" despite the fact that on exam Plaintiff exhibited "normal motor and sensory exam" and his "[r]ange of motion [was] also normal." [AR 350] This assessment was confirmed by the x-ray, which Dr. Rubinson ordered and was contained in his records. [AR 346-50] Specifically, the x-ray showed normal vertebral body alignment and body

heights, and normal facet joints, but also degenerative disc disease based on "disc space narrowing and endplate osteophytes" at L5-S1. [AR 347] Whether or not Dr. Rubinson provided his opinion prior to reviewing the x-ray results is inconsequential as he based his opinion on Plaintiff's reported symptoms and limitations, his examination of Plaintiff, and his assessment of some degenerative disc disease, which was confirmed by contemporary x-rays ordered by Dr. Rubinson. [AR 350]

Plaintiff also asserts that Dr. Rubinson's opinion could not be persuasive because it was limited to Plaintiff's abilities on the day of the examination. Such argument is belied by Dr. Rubinson's report which opines as to Plaintiff's workplace abilities and is based on Plaintiff's longitudinal complaints. [AR 347-50]

Finally, Plaintiff's argument that Dr. Rubinson failed to specify Plaintiff's ability to sit or sit/standing is unavailing in that the report only addressed areas upon which Plaintiff was limited (as opposed to unlimited). Dr. Rubinson's determination that Plaintiff could "stand and walk 6 hours cumulatively in and 8-hour day," and that he did "not exhibit any postural or manipulative limitations," is sufficient basis for the reasonable conclusion that Dr. Rubinson opined that Plaintiff was unlimited in this ability sit or sit/stand, except that he could only stand up to 6 hours a day. [AR 350]

In sum, I find that Plaintiff's specific challenges to the ALJ's determination that Dr. Rubinson's opinion was persuasive are unavailing. Additionally, the ALJ applied the correct legal standard to her determination of the persuasiveness of Dr. Rubinson's opinion, and such determination is supported by sufficient evidence.

### B. Assessment of Plaintiff's Subjective Complaints

Plaintiff also challenges the ALJ's assessment of his reported subjective complaints.

When assessing Plaintiff's complaints and the resulting limitations on his ability to work, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are *not entirely consistent* with the medical evidence and other evidence in the record." [AR 15] (emphasis added). Then, after comparing the medical evidence of record to the various limitations alleged by Plaintiff, the ALJ found, in conclusion, that:

> the evidence of the claimant's daily activities along with the objective medical evidence discussed above establishes that the claimant has a greater sustained capacity than he alleges. The undersigned hereby concludes that the claimant's subjective complaints and alleged limitations are not fully persuasive and that he retains the capacity to perform work activities with the limitations as set forth [in his assessed RFC]. [AR 16]

Determinations of a claimant's subjective complaints "are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, such findings should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Newbold v. Colvin,* 718 F.3d 1257, 1267 (10th Cir. 2013). "[S]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility [or subjective complaints], he need not make a formalistic factor-by-factor recitation of the evidence. Again, common sense, not technical perfection, is our

guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (citation and quotation omitted).

The ALJ's order clearly set out each of Plaintiff's subjective complaints, and then discussed how the specific medical evidence of record was contradictory to such claims. For example, the ALJ's order provides that:

> The claimant alleged disabling low back pain, but he has had primarily normal findings on physical examinations and treatment has been limited. X-rays of the claimant's lumbar spine showed L5 to S1 disc space narrowing and endplate osteophytes. On examination, the claimant had midline lumbar tenderness at the L3 to L5 levels and paraspinal tenderness. However, he maintained full range of motion in his spine and he denied pain with straight leg raise testing. Additionally, the claimant had full motor strength, no sensory deficit, and normal gait and coordination. The claimant was able to walk on heels and toes and do heel-to-toe walking. During the consultative examination, the claimant reported his low back pain was intermittent and he occasionally used patches and massaging to help. At that time, the claimant reported he was not taking any medications for his back. The claimant received some chiropractic care and physical therapy, but there is no evidence of additional treatment such as injections or surgical intervention. Moreover, the claimant reported his back symptoms improved with physical therapy. Accordingly, the undersigned finds the claimant's lumbar degenerative disc disease is not limiting to the extent alleged. [AR 15]

The ALJ found that Plaintiff's claim that he was disabled and unable to work due to his low back pain was unsubstantiated by the medical records, and thus his claim was not fully credible. The ALJ went on to do the same regarding his alleged limitations due to his migraines and tension headaches [AR 15], and then described how his daily activities likewise did not support his claimed limitations. [AR 16] The substantial evidence supports the ALJ's finding that Plaintiff's claim of disabling limitations and, as such, her determination that Plaintiff was "not entirely consistent" is not in error.

Plaintiff argues on appeal that the ALJ's finding that the evidence is "not

entirely consistent" with his reported limitations constitutes "canned" language that "is not capable of measurement at all, much less measurement against the substantiality of evidence of record legal standard." [Doc #15 at pp. 14, 19] I disagree with Plaintiff's assertion, however, that a finding of "not entirely consistent" is incapable of review because it indicates an unknown degree of less than 100% consistency. *See generally Garcia v. Comm'r, SSA*, 817 F. App'x 640, 647 (10th Cir. 2020) (unpublished) (upholding the ALJ's credibility finding that the claimant's statements concerning his symptoms were "not entirely consistent with the medical evidence and other evidence in the record" on the basis that they "are peculiarly the province of the finder of fact" and should be upheld "when supported by substantial evidence")(citing *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Cullen v. Kijakazi*, No. 3CV1690ASRWL, 2024 WL 564501, at *15-19 (S.D.N.Y. Feb. 9, 2024), *report and recommendation adopted sub nom. Cullen v. Kijazaki*, No. 23-CV-1690(AS), 2024 WL 1158455 (S.D.N.Y. Mar. 18, 2024) (unpublished) (finding that an ALJ's determination that a claimant's statements about the severity of his symptoms "are not entirely consistent with the medical evidence and other evidence in the record" was exactly what the regulations require; a consideration of the "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence" and, thus, "[u]nsurprisingly, courts routinely endorse the "not entirely consistent" phrasing) (citations omitted).

### C. Activities as Evidence in Support of RFC

I next address Plaintiff's argument that the ALJ improperly relied upon

discrete activities or incidents in the medical record which, he asserts, are not supportive of the ALJ's determination of Plaintiff's ability to perform sustained work (8 hours a day, five days a week) when assessing his RFC. I again find no error.

An RFC is an assessment of the claimant's ability "to do sustained work-related physical and mental activities in a work setting" for eight hours a day, five days a week, or the equivalent thereof. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184 at *2. "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Garcia v. Saul*, 509 F. Supp. 3d 1306, 1310 (D.N.M. 2020) (quoting *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (unpublished) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). A claimant's RFC is an assessment of the most work the claimant can physically and mentally perform, not the least. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Spencer v. Kijakazi*, No. 20-CV-00786-NYW, 2021 WL 4133920, at *3 (D. Colo. Sept. 10, 2021) (unpublished). This court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *Id.* (citing *Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004)).

Plaintiff argues that the ALJ relied on only brief, sporadic activities contained in the medical records that do not evidence his ability to do sustained activities over a regular work week. For example, in support of this contention, Plaintiff asserts that the ALJ relied upon Dr. Rubinson's examination findings on July 3, 2019, that Plaintiff's gait was normal, and he was "able to walk on heels and

toes and do heel-to-toe walking." [AR 350] Plaintiff asserts that the ALJ's reliance on discrete references in the record, such as this, are insufficient to support an RFC determination that he could perform sustained work (for eight hours a day, five days a week).

Plaintiff characterization that the ALJ relied on singular or one-time references in the record to support her RFC conclusions is refuted by the ALJ's order. In so finding, I note that the medical records are limited. However, when concluding that Plaintiff's lumbar degenerative disc disease was not limiting to the extent alleged, the ALJ relied on: 1) primarily normal findings on physical examinations; 2) that Plaintiff's treatment had been limited to some chiropractic care and physical therapy (during which his back symptoms improved), but there is no evidence of additional treatment such as injections or surgical intervention; 3) x-rays that showed disc space narrowing and endplate osteophytes at L5 to S1, and midline lumbar tenderness at the L3 to L5 levels and paraspinal tenderness, but examination that showed a full range of motion in his spine and no pain with straight leg raise testing, as well as full motor strength, no sensory deficit, and normal gait and coordination; and 4) Plaintiff reported his low back pain was intermittent (he occasionally used patches and massaging to help) and that was not taking any medications for his back during the consultative examination. [AR 15]

Based on the foregoing, I find that Plaintiff's claim that the ALJ improperly relied on discrete activities in the medical record which are not supportive of the ALJ's RFC determination of his ability to perform sustained work is belied by the order and the evidence of record.

### D. Chiropractic Evidence

Plaintiff also asserts that the ALJ "overlooked" the chiropractic evidence in the record, but I find no error.

A review of the administrative record reveals an initial consultation by a chiropractor on April 16, 2018, in which Plaintiff was assessed with cervicobrachial syndrome of the cervical spine, lumbar disc displacement, knee pain in the joint, and thoracic subluxation. [AR 333-45] Plaintiff then followed with the chiropractor for approximately forty visits from April 17, 2018, to July 16, 2018. [AR 340, 345] In her order, the ALJ noted, when concluding that the medical records did not demonstrate that Plaintiff's low back pain was disabling, that he received some chiropractic care and physical therapy, but no other treatment for his low back pain. [AR 15] The order does not provide any additional discussion or analysis of the chiropractic records.

Plaintiff takes issue with the ALJ's failure to specifically discuss the chiropractic records. First, to the extent Plaintiff claims that the ALJ's lack of discussion indicates that she didn't understand the chiropractor notes, such claim is not supported by the record. I likewise reject Plaintiff's contention that, as a result, the ALJ should have sought out explanatory support to interpret the records. And I am not persuaded by Plaintiff's unsubstantiated claim that "chiropractic records require specific training to understand them," and that the "record is devoid of any indication that the ALJ had the skills necessary to understand chiropractic medical records." [Doc #15 pg. 13]

"[A]n ALJ is not required to discuss every piece of evidence" but must discuss

only the evidence supporting the decision and "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Plaintiff has not asserted how or why the chiropractor notes constitute evidence that contradicts the RFC assessed by the ALJ, and I note that the chiropractor did not provide an opinion as to Plaintiff's ability to work. *See Padilla v. Astrue*, No. CV 11-452 RHS, 2012 WL 13080785, at *5 (D.N.M. Mar. 22, 2012)(finding no error in the failure to address a chiropractor's record, submitted to the Appeals Council, indicating that "it is very difficult [for the claimant] to do any type of physical work without being in pain," which was unsupported by treatment records or a functional capacity assessment that concluded Plaintiff was disabled).

As a result, I find no error in the lack of discussion in the ALJ's order of the chiropractor notes under the circumstances presented here. *See generally Howard v. Barnhart*, *supra*, 379 F.3d at 947 (noting that "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."); *Porter v. Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006) (unpublished) (finding that "the ALJ did not err by failing to consider the opinion of a medical source . . . [as] a chiropractor is not listed as an acceptable medical source.").

### E. RFC Non-Exertional Requirements

Finally, Plaintiff argues that the assessed RFC is "grossly incomplete" in that it failed to address three relevant "non-exertional limitations" – namely, Plaintiff's work "absences" necessitated by his migraines; his "attentiveness;" and his limited

skills based on his incomplete formal education. [Doc #15 pp. 20-21] Plaintiff further maintains that because the RFC did not address these limitations, the Commissioner did not, in turn, meet his burden at step five. [Doc #15 pg. 21]

First, I address Plaintiff's argument that the RFC assessed by the ALJ did not account for the fact that, based on the number of doses prescribed of his migraine medication, he would have between five and nine migraines per month and that a migraine would require a day's absence from work. [Doc #15 pg. 12] However, the ALJ found that the record did not support a finding that Plaintiff's migraines and tension headaches were disabling in that:

> During the consultative examination in July 2019, the claimant reported experiencing headaches two to three times per month, but he indicated his headaches had not been medically evaluated. The consultative examiner noted the headaches were of unknown etiology and they were not too frequent. Subsequently, a computerized tomography angiogram (CTA) of the claimant's brain showed a small three-millimeter aneurysm which was determined to be incidental and did not explain the claimant's symptoms. The claimant was later prescribed medication for headaches and he reported improvement with medication. Additionally, the claimant reported his migraines were occurring once every two months. Moreover, the claimant had normal neurological examinations and he was observed to be alert and oriented. [AR 16]

As a result, the ALJ assessed environmental limitations in Plaintiff's RFC (namely, that he avoid working in noisy, industrial environments and would work best in a moderate or office noise level setting or less) that accounted for Plaintiff's limitations due to his headaches. *Id.*

The ALJ's determination as to the extent of the limitations arising from Plaintiff's migraines and tension headaches was supported by substantial evidence, and it is not the court's job to reweigh evidence adequately considered by the ALJ.

See *Joshua B. R. v. Kijakazi*, No. 20-CV-00678-SH, 2022 WL 852863, at *7 (N.D. Okla. Mar. 22, 2022) (unpublished) (declining to reweigh evidence related to the limiting effects of the plaintiff's migraines).

Likewise, to the extent that Plaintiff contends that the ALJ erred in that his RFC did not include any limitation for his deficits in "attentiveness," I again disagree. Plaintiff does not refer to any record evidence in support of his claim that he suffers from inattentiveness, or being off task, beyond his subjective testimony. And the ALJ's decision to not include any limitation in Plaintiff's RFC is supported by sufficient evidence. Specifically, when assessing Plaintiff's ability to concentrate, persist or maintain pace at step two, the ALJ found that Plaintiff had "no limitation" based on the following:

> The claimant was observed to have decreased attention and concentration during one appointment. However, he had normal attention span and concentration during other appointments. He was also observed to be alert and oriented and his cognitive exam was grossly intact. During the consultative examination, the claimant performed serial 20s and he spelled "world" forward and backward. The claimant has sufficient ability to concentrate, persist, and maintain pace in order to perform his activities of daily living, including driving, shopping in stores, and preparing meals. [AR 13]

Finally, I reject Plaintiff's assertion that the ALJ's "failure" to address his General Educational Development ("GED") levels when assessing his RFC constituted error. GED scales are a component of the definition trailer of each Occupational Definition listed in the Dictionary of Occupational Titles. As the Tenth Circuit has explained, "GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational

background that makes an individual suitable for the job". *Andersen v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished); *see also David Patrick M. v. Kijakazi*, No. CV 22-1211-JWL, 2023 WL 5175011, at *3 (D. Kan. Aug. 11, 2023) (GED scales "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.") (citing DOT, App'x C, III). As such, Plaintiff's argument that consideration of his GED scales was required as part of the RFC assessment, as non-exertional limitations, is misplaced.

ACCORDINGLY, for the foregoing reasons, I AFFIRM the final order of the SSA Commissioner denying Plaintiff's application for disability insurance benefits and supplemental security income.

Dated: August 13, 2024 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE